GREENBERG TRAURIG, LLP
MATTHEW R. GERSHMAN (SBN 253031)
gershmanm@gtlaw.com
BENJAMIN S. KURTZ (SBN 280515)
kurtzb@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone:  310-586-7700 / Facsimile:  310-586-7800

Attorneys for Plaintiff
UL LLC

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UL LLC,<br><br>            Plaintiff,<br><br>v.<br><br>Jia Ling Zhao, an individual; JTL Import Inc., a California corporation,<br><br>            Defendants. | Case No.: 2:18-cv-3077<br><br>**COMPLAINT FOR:**<br>**1. FEDERAL TRADEMARK INFRINGEMENT;**<br>**2. COUNTERFEIT OF REGISTERED MARK;**<br>**3. FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN AND FALSE AND MISLEADING REPRESENTATIONS;**<br>**4. UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200 *ET SEQ.***<br><br>**JURY TRIAL DEMANDED** |

COMPLAINT

CHI 69138964v2

Plaintiff UL LLC ("UL" or "Plaintiff") hereby alleges:

## JURISDICTION AND VENUE

1.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1338(a) and (b), because the claims address federal questions concerning the Lanham Act, 15 U.S.C. § 1121, trademark infringement of federally registered trademarks pursuant to 15 U.S.C. § 1114, and federal unfair competition pursuant to 15 U.S.C. § 1125(a).

2.     The Court has supplemental jurisdiction over the claim arising under the laws of the State of California, pursuant to 28 U.S.C. § 1367(a), because the state law claim is so related to the federal subject-matter claims that it forms part of the same case or controversy and derives from a common nucleus of operative fact.

3.     The illegal activities involved in this action are broad in scope and involve many players, all of whom are either named Defendants in this complaint or a co-pending action titled *UL LLC v. Gangsong Group Corporation, et al*, Central District of California Case Number 2:17-cv-08166.  Shenzhen Kebe Technology Co. Ltd. ("Kebe") is the source manufacturer of the hoverboards bearing the counterfeit UL mark and also sells hoverboards on various websites, claiming that they are UL certified, when they are not.  Jing Hua Zhou is the owner of Kebe.  Defendant JTL Import Inc. ("JTL Import") imported hoverboards bearing the counterfeit UL mark.  Gangsong Group Corporation ("Gangsong"), Flying Medical USA LLC ("Flying Medical"), and Logistic Public Warehouse (collectively "Santa Fe Springs Defendants") are all located at the same Santa Fe Springs warehouse from which the Sheriff's Department seized counterfeit UL labels and hoverboards bearing counterfeit UL labels.  Thomas Soon Chiah holds an executive position with each of these companies.  Defendants Shenzhen Leidisi Electronics Technology Co., Ltd. ("Leidisi"), TRC International Corporation ("TRC"), Sum Fortune International Group ("Sum Fortune"), and Defang USA, LLC ("Defang") sold and distributed the hoverboards identified in the raid (collectively "Corporate Distribution Defendants").  On information and belief, Defendant Jia Ling Zhao is the owner of

1

## COMPLAINT

Leidisi and Sun Defang is the owner of Defang.   ManSeeManWant LLC ("ManSeeManWant") is an Illinois company that also sells and distributes Kebe's hoverboard products that were identified in the raid.   ManSeeManWant advertises these hoverboards on its website, claiming they are UL certified when, in fact, they are not. James Ellenberg owns ManSeeManWant.

4.    This Court has personal jurisdiction over defendant JTL Import because it is a California corporation that conducts business in the State of California and within this District.   The Court also has personal jurisdiction over Jia Ling Zhao because she conducts business in the State of California and within this District.   Ms. Zhao has sold and distributed goods in association with the infringing marks in the State of California, thus purposefully availing herself of the privilege of conducting activities in the State of California.

5.    This Court has specific jurisdiction over the defendants because UL's claims for trademark infringement, counterfeiting, and unfair competition arise from harm sustained in the State of California.   Defendants have engaged in purposeful affirmative activity directed at the State of California by, on information and belief, shipping products from China for distribution and sale within the State of California, importing products from China for distribution and sale within the State of California, maintaining offices in the State of California, and regularly offering for sale their goods to persons and entities in the State of California.   Further, defendants are causing tortious injury in the State of California by acts or omissions outside of the State of California and regularly solicit business in the State of California.

6.    This Court also has general jurisdiction over the defendants who have engaged in continuous and systematic activity within the State of California by, on information and belief, maintaining offices in the State of California and within this District, regularly importing goods into the State of California, and offering them for sale in the State of California.

2

COMPLAINT

CHI 69138964v2

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because, upon information and belief, a substantial part of the events or omissions giving rise to the claims occurred and are occurring in this District.

## THE PARTIES

8.     Plaintiff UL is a Delaware limited liability company located and doing business at 333 Pfingsten Road, Northbrook, Illinois 60062.

9.     On information provided by Gangsong Group Corporation in the co-pending action, defendant Jia Ling Zhao is the owner of Leidisi and a resident of China.

10.     Defendant JTL Import is a California corporation doing business at 9690 Telstar Avenue Suite 222B El Monte, California 91731.

## NATURE OF THIS ACTION

11.     This is an action for trademark infringement, counterfeiting, and unfair competition under the Federal Trademark Act of 1946, known as the Lanham Act, 15 U.S.C. § 1051, et seq., and violation of California Business and Professions Code section 17200 *et seq*.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

**A.     UL'S VALUABLE RIGHTS**

12.     UL is an affiliate of the UL family of companies, which have tested, inspected, and certified products, and developed safety standards for over a century.

13.     Some of the services offered by UL include: testing, inspection, certification, advisory services, education and training, testing, auditing and analytics, software solutions, and marketing claim verification.

14.     UL's certification services include testing and inspecting representative product samples of its customers to ensure they satisfy applicable safety standards, and providing follow-up services to audit via random, unannounced visits the means the manufacturer uses to determine the product's continued compliance with UL's requirements.

3

COMPLAINT

CHI 69138964v2

15.   UL owns the well-known UL-in-a-circle certification mark ⓤ and variations thereof (the "UL Certification Marks").  UL also owns the UL Service Mark "UL" (the "UL Service Mark" and, collectively, the "UL Marks").

16.   The UL family of companies has been providing testing reports and certifying products that conform to UL's Standards for Safety since at least 1906.  Since at least 1906, UL, including its affiliates and predecessors, have continuously used the UL Marks in interstate commerce.

17.   UL has been testing products and authorizing use of the famous UL Certification Marks on products that conform to UL's Standards for Safety in interstate commerce in the United States since at least 1937.  UL's authorized customers have been using the UL Certification Marks on products offered for sale and distributed in interstate commerce since 1937.

18.   UL serves all members of the general public, including, but not limited to, consumers, manufacturers, suppliers, retailers, vendors, trade groups, industry associations, regulatory bodies, and governmental entities.

19.   UL's thousands of authorized customers have used UL's well-known UL Certification Marks on billions of household, consumer, commercial, and industrial products including refrigeration equipment, lighting products, cable, wiring, building materials, life safety vests, batteries and power packs for computers and consumer electronics, traffic signals, sprinklers, cash registers, and many more.

20.   Over the past century, UL has used its UL Marks to promote its certification programs through a wide variety of marketing channels and outlets on a national, regional, and local basis, including but not limited to television, radio, consumer and trade newspapers, consumer and trade magazines, industry trade journals, promotional literature, brochures, direct mail, email campaigns, and interactive websites and webpages such as <ul.com> and the UL Safety at Home page located on <facebook.com>.

CHI 69138964v2

21.     As a result of UL's extensive use of the UL Marks to promote its certification programs, including standards development activities, follow-up conformity assessment and inspection services, community involvement, and safety science research, the UL Marks have attained a national and global reputation for technical expertise and integrity, and have become a symbol of trust and objectivity.

22.     The UL Marks are well-known and recognized by the general public as well as members of local, state and federal government regulatory bodies and industry trade associations, as marks indicating testing, inspection, validation, certification, training, advising, and auditing services originating with UL.

23.     The UL Service Mark and the UL Certification Marks are renowned among the general public as symbols of UL's testing, inspection and certification services originating with UL, and have been renowned since long before Defendants began engaging in the conduct alleged in this Complaint.

24.     UL has duly and properly registered the UL Service Mark and the UL Certification Marks in the United States Patent and Trademark Office ("USPTO") on the Principal Register.  UL owns the following federally registered marks.  Copies of some of these registrations, or their corresponding USPTO website pages, are attached as **Exhibits A through D**.

| MARK | REG. NO. | EXHIBIT | TYPE |
|---|---|---|---|
| (UL) | 0,782,589 | A | Certification Mark |
| (UL) | 2,391,140 | B | Certification Mark |
| UL | 4,201,014 | C | Service Mark |

5

COMPLAINT

| MARK | REG. NO. | EXHIBIT | TYPE |
|---|---|---|---|
| (UL CERTIFIED logo) | 4,283,962 | D | Certification Mark |

25.     The federal trademark registrations referenced above are valid and subsisting, and provide conclusive evidence of the right of UL to use the UL Marks in commerce.

26.     UL certifies the products of others in a variety of industries (the "Certification Services") under its UL Certification Marks (Exhibits A-B, D).  The UL Certification Mark is the single most accepted certification mark in the United States, appearing on 22 billion products annually.  UL has adopted an enhanced version of its Certification Marks, shown in Exhibit D, to deliver greater transparency and inspire buyer confidence at point-of-sale.  UL also introduced holographic labels to prevent or deter duplication of its Certification Marks by counterfeiters. Holographic labels provide greater security because it is very difficult for counterfeiters to imitate the unique features.

27.     UL offers educational, business advisory, product safety testing, and public safety services (the "UL Services") under its UL Service Mark.

28.     Use and registration of the UL Certification Marks and the UL Service Mark clearly establish that UL has senior trademark rights in its family of UL Certification Marks and UL Service Mark, and consequently there is no question of priority of rights, as such priority clearly belongs to UL.

29.     UL's United States Trademark Registration Nos. 2391140 and 782589 referenced above are incontestable under 15 U.S.C. § 1115(b).   As such, UL's incontestable federal trademark registrations confer exclusive use of the UL Certification Marks throughout the United States in connection with the UL Certification Services.

30.     UL has extensively used the UL Service Mark and has advertised, promoted, and offered the UL Services under the UL Service Mark in interstate commerce through

6

COMPLAINT

various channels of trade. As a result, the customers and potential customers of UL, and the public in general have come to know and recognize the UL Service Mark as identifying the UL Services as services of the highest quality offered by UL, and associate the UL Service Mark with the UL Services. UL has thus built up extensive and invaluable goodwill in connection with the sale of its services offered under its UL Service Mark.

**B.   UL's PRODUCT CERTIFICATION PROCESS**

31.    Manufacturers may seek UL certification and listing in the UL certification directory by submitting representative product samples for evaluation and/or testing. UL will examine these representative samples to determine whether they comply with the applicable safety, performance or other standards.

32.    If the representative samples comply with the applicable standard, and the manufacturer has adequate procedures in place to ensure that its production runs will be consistent with those representative samples, UL may authorize the manufacturer to affix the UL Certification Mark to that product and to advertise the product as being UL Certified.

33.    When a manufacturer's product has been found eligible for UL certification, the product is subject to UL's follow-up services whereby representatives of UL will make random, unannounced visits to the factory a few times per year to audit the means the manufacturer uses to determine the product's continued compliance with UL's requirements ("Follow-Up Services"). The manufacturer's use of the UL Certification Mark is the manufacturer's representation that the product is in compliance with UL's requirements and subject to UL's Follow-Up Services.

**C.   DEFENDANTS' WRONGFUL CONDUCT**

34.    In the fall of 2015, self-balancing two-wheeled scooters called "hoverboards" became a popular consumer item. In order to meet holiday demand, unscrupulous manufacturers rushed these products to production without sufficient attention to key safety details.

7

**COMPLAINT**

35.    By mid to late 2015, there were numerous reports about hoverboards self-combusting and catching on fire.  Hoverboards that were exploding and setting on fire became a significant safety concern because users were being injured and homes and cars were being damaged as a result of such unsafe hoverboards.

36.    On December 15, 2015, the United States Consumer Product Safety Commission ("CPSC") opened an investigation into hoverboard safety.  The CPSC was prompted to open its investigation because it had received at least 29 reports of personal injuries from hoverboards that required emergency room treatment and 10 other reports of hoverboards catching fire.

37.    On information and belief, because these safety issues harmed sales, many unscrupulous manufacturers responded to this negative press by falsely claiming that their hoverboards were "UL Certified."  In 2015, no safety standard for self-balancing scooters existed, and any claim that a hoverboard was "UL Certified" was patently false.

38.    In February of 2016, UL released a safety standard, UL 2272 *"Outline of Investigation for Electrical Systems for Self-Balancing Scooters"*, for self-balancing scooters, and UL has been working with several manufacturers to certify products which meet that standard.  UL did not issue its first certification of hoverboards under this standard until on or about May 2016.  Unfortunately, there are a number of counterfeiters, such as defendants, who insist on claiming that their product is certified by UL when, in fact, they are not UL customers and have never asked UL to inspect or certify their product.

39.    Notwithstanding UL's exclusive rights in and to the UL Certification Marks and the UL Service Mark, and well after UL's adoption and registration of the UL Certification Marks and the UL Service Mark, defendants adopted and began using a mark that is identical to or substantially indistinguishable from the UL Certification Marks (the "Counterfeit Mark") to suggest falsely that their goods have been certified by UL.    Specifically, defendants are using a Counterfeit Mark on hoverboards. Representative photos of the hoverboard products ("Defendants' Goods") are below:

8

COMPLAINT

1
2
3
4
5
6
7
8
9
10



11
12
13
14
15
16
17
18
19
20
21
22
23
24



25  Certain of the hoverboards photographed above bear labels with the Counterfeit Mark,
26  representing to customers that Defendant's Products are certified by UL when they are
27  not.  Last fall, the Los Angeles Sheriff's Department ("LASD") discovered over two-
28

COMPLAINT

thousand labels bearing the Counterfeit Mark at the Santa Fe Springs warehouse.  Images of these labels are below:



40.    On information and belief, the Santa Fe Springs Defendants, Mr. Chiah, Kebe, Mr. Jing Hua Zhou, Ms. Jia Ling Zhao, and other unknown individuals, affixed the counterfeit UL Certification Marks on Defendants' Products.

41.    On information and belief, defendant Kebe maintains a website at <www.szkebe.cn>.  The website describes Kebe as an "OEM manufacturer."  Thus, on information and belief, defendant Kebe is the manufacturer of Defendants' hoverboard products bearing the Counterfeit Mark.

CHI 69138964v2

42.     On information and belief, the Santa Fe Springs Defendants, Mr. Chiah, Mr. Zhou, and other unknown individuals, imported the hoverboards into the United States with the intent to affix counterfeit UL Certification Marks on the hoverboards and sold them to consumers in the United States. Defendant JTL Import imported hoverboards from Kebe into the United States, including hoverboards shipped on April 6, 2017 and May 2, 2017. **See Exhibit H.**

43.     On information and belief, the Corporate Distribution Defendants, Mr. Defang, Jia Ling Zhao, and other yet unknown individuals sold and distributed the hoverboards bearing counterfeit UL Certification Marks in the State of California.

44.     On information and belief, defendants ManSeeManWant, James Ellenberg, and other yet unknown individuals maintain an interactive website at <https://manseemanwant.com/>.   The website offers for sale and sells hoverboards which are marketed as UL Certified to consumers in the United States.  **Exhibit E.**  Mr. Ellenberg causes ManSeeManWant to falsely advertise and promote these hoverboard products as compliant with UL2272.  Mr. Ellenberg obtained these hoverboards from Chiah, the Santa Fe Springs Defendants, TRC, Leidisi, and Jia Ling Zhao.  **Exhibit F.** ManSeeManWant is also advertising Universal Hoverboard Replacement Battery Packs as being UL Certified when they are not, in fact, UL Certified.

45.     On information and belief, defendants Kebe, Jing Hua Zhou, and other yet unknown individuals maintain an interactive website at < http://www.zhoujimall.com/ >. The website sells hoverboards falsely marketed as UL Certified and bearing the Counterfeit Mark.  **Exhibit G.**

46.     Defendants are using a Counterfeit Mark that is identical to and confusingly similar to the UL Certification Marks in appearance, sound, meaning, and commercial impression.

47.     Defendants are using a Counterfeit Mark that falsely suggests that the Defendants' Products have been authorized or certified by UL.

COMPLAINT

CHI 69138964v2

48.    Defendants' use of the Counterfeit Mark trades off the goodwill of the UL Service Mark and the UL Certification Marks and is without permission or license from UL.

49.    On September 18, 2017, a UL representative accompanied a task force from the Los Angeles Sheriff's Department as it executed a search warrant at the warehouse located at 10001 Pioneer Boulevard, Santa Fe Springs, California, 90670-3221.  A UL representative identified 2,325 counterfeit UL holographic labels in addition to approximately 2,500 hoverboards, some of which were affixed with labels bearing the Counterfeit Mark.  The retail value of this quantity of counterfeit goods, if genuine, would be over $580,000.

50.    The goods are advertised and sold in commerce using the Counterfeit Mark to falsely suggest that the hoverboards are certified by UL.

51.    Defendants' Products associated with the Counterfeit Mark have never been certified by UL to any safety requirements, and as such, may place the health and safety of the user at risk.  Indeed, U.S. consumers purchase these types of high voltage products relying on the representation that the products are certified by UL, particularly given the numerous reports of uncertified hoverboards catching fire.

52.    Defendants' infringement has at all times been knowing and willful. Defendants were on constructive notice of the UL Certification Marks and the UL Service Mark by virtue of their federal registration.    Defendant Jia Ling Zhao directed placement of the Counterfeit Mark on the hoverboards and marketed the products as being "UL2272 Certified."

53.    Each of defendants is aware that they have never asked UL for permission to use any of the UL marks.  Each of the defendants is aware that UL has never authorized any of defendants to make any use of the UL Marks.

54.    Upon information and belief, none of Defendants have ever communicated with UL concerning obtaining certification of their hoverboard products.

COMPLAINT

CHI 69138964v2

55.     Upon information and belief, defendants intend to continue using the Counterfeit Mark without the authorization of UL, thereby confusing consumers as to the certification of the goods by UL and resulting in damage and detriment to UL and its reputation and goodwill.

56.     Upon information and belief, defendants knew or had reason to know of the UL Certification Marks and the UL Service Mark at the time defendants commenced use of their Counterfeit Mark.  Upon information and belief, defendants intentionally adopted and use the Counterfeit Mark so as to create consumer confusion and traffic off of UL's reputation and goodwill under the UL Certification Marks and UL Service Mark.

## COUNT ONE

## (Federal Trademark Infringement – 15 U.S.C. § 1114)

57.     UL repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth herein in full.

58.     Defendants' Counterfeit Mark is identical to or substantially indistinguishable from the UL Certification Marks and UL Service Mark in appearance, sound, meaning, and commercial impression, such that the use and registration thereof is likely to cause confusion, mistake, and deception as to the authorization and/or certification of Defendants' goods, and that the public is likely to be confused, deceived, and to assume erroneously that Defendants' goods have been certified by UL or that defendants are in some way connected with, licensed, authorized, certified by, or affiliated with UL, and will irreparably injure and damage UL and the goodwill and reputation symbolized by the UL Certification Marks and the UL Service Mark.

59.     As the Counterfeit Mark used on Defendants' goods and intended to be used on Defendants' goods is identical to or substantially indistinguishable from the UL Certification Marks and UL Service Mark, the public is likely to be confused and deceived, and to assume erroneously that Defendants' goods have been certified by UL or that defendants are in some way connected with, licensed, sponsored by, or affiliated with UL, all to UL's irreparable damage.

13

COMPLAINT

60.     Likelihood of confusion is enhanced by the fact that the UL Certification Marks and the UL Service Mark are strong, well-known, and entitled to a broad scope of protection.

61.     Likelihood of confusion is also enhanced by the fact that the Counterfeit Mark, the UL Certification Marks and the UL Service Mark prominently incorporate the key component "UL."

62.     Defendants are not affiliated or connected with UL and have not been endorsed or sponsored by UL, nor has UL approved any of Defendants' goods offered or sold or intended to be sold by Defendants under the Counterfeit Mark.

63.     Defendants have never sought or obtained the permission of UL to use the Counterfeit Mark, nor has UL certified any of Defendants' goods offered under Defendants' Counterfeit Mark.

64.     UL's United States Trademark Registrations set out above provide, at the very least, constructive notice to Defendants of the rights of UL in and to the UL Certification Marks and the UL Service Mark.

65.     Defendants' use of the Counterfeit Mark in connection with the Defendants' goods is likely to cause confusion, mistake, or deception of consumers as to the authorization or certification of the goods, in violation of the Lanham Act, including but not limited to 15 U.S.C. § 1114.

66.     Consumers are likely to purchase or engage Defendants' goods being offered under the Counterfeit Mark believing them to have been certified by UL, thereby resulting in a loss of goodwill and economic harm to UL.

67.     Upon information and belief, Defendants intentionally adopted and use the Counterfeit Mark so as to create consumer confusion and traffic off of UL's reputation and goodwill under the UL Certification Marks and the UL Service Mark.

68.     UL is informed and believes and on that basis alleges that Defendants have derived unlawful gains and profits from their infringing use of the Counterfeit Mark.

COMPLAINT

69.     The goodwill of UL's business under the UL Service Mark is of great value, and UL will suffer irreparable harm should Defendants' infringement be allowed to continue to the detriment of the trade reputation and goodwill of UL for which damage UL cannot be adequately compensated at law.

70.     UL has no control over the quality of the goods offered by Defendants. Thus, the great value of the UL Certification Marks and the UL Service Mark is subject to damage by an entity it cannot control.

71.     Unless Defendants are enjoined by this Court from so doing, UL will continue to suffer irreparable harm and injury to its goodwill and reputation.

72.     Upon information and belief, Defendants have engaged in acts of infringement, with knowledge of UL's exclusive rights in and to the UL Certification Marks and the UL Service Mark in connection with the UL Services, and Defendants continue in such acts of intentional infringement, thus entitling UL to an award of treble damages, disgorgement of Defendants' profits, and attorneys' fees and costs in bringing and maintaining this action, pursuant to Section 35(b) of the Lanham Act, 15 U.S.C. § 1117(b).

## COUNT TWO

### (Counterfeit of Registered Mark – 15 U.S.C. § 1114)

73.     UL repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth herein in full.

74.     UL owns valid and incontestable United States Trademark Registrations for its UL Certification Marks, as set out above.

75.     Well before any of Defendants' actions complained of herein were committed, UL had continuously used the UL Certification Marks throughout the United States in connection with its Certification Services.

76.     Defendants use a non-genuine version of the UL Certification Marks and UL Service Mark that is identical to, or substantially indistinguishable from, the UL Certification Marks and UL Service Mark.

15

COMPLAINT

77.     The UL Certification Marks are registered on the Principal Register as a certification mark, and Defendants are intentionally using the Counterfeit Mark to falsely suggest that Defendants' goods have been certified by UL.

78.     UL did not authorize Defendants' use of the Counterfeit Mark, and such unauthorized use of the UL Certification Marks and UL Service Mark is likely to confuse consumers into falsely believing that Defendants' goods are authorized or certified by UL when, in fact, they are not.

79.     Defendants' use of the Counterfeit Mark without consent from UL was and is a willful and intentional infringement of UL's registered UL Certification Marks and UL Service Mark.

80.     Defendants have profited from their acts of infringement.  UL is entitled to recover Defendants' profits arising from the infringement, any damages sustained by UL arising from said infringement, as well as the costs of this action.  UL also is entitled to an enhanced award of profits and/or damages to fully and adequately compensate it for Defendants' infringement.  At its election, UL also is entitled to statutory damages.

81.     Defendants have caused and, unless enjoined by this Court, will continue to cause irreparable injury to UL that is not fully compensable in monetary damages.  UL is therefore entitled to a preliminary and permanent injunction enjoining and restraining Defendants from use of the UL Certification Marks and UL Service Mark or any other mark that is confusingly similar to the UL Certification Marks and the UL Service Mark.

## COUNT THREE

### (Federal Unfair Competition and False Designation of Origin and False and Misleading Representations – 15 U.S.C. § 1125(a))

82.     UL repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth herein in full.

83.     Defendants' use of the Counterfeit Mark constitutes unfair competition and a false designation of origin or false or misleading description or representation of fact, which is likely to deceive customers and prospective customers into believing that

16

CHI 69138964v2

Defendants' goods offered for sale under Defendants' Counterfeit Mark have been certified by UL, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

84.    Defendants' actions cause or are likely to cause confusion or mistake among the public as to the authorization or certification of Defendants' goods offered for sale under Defendants' Counterfeit Mark, or to confuse the public into believing that Defendants' goods have the approval of UL, or are otherwise affiliated, connected, associated with, or sponsored by UL, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

85.    UL has no control over the nature and quality of Defendants' goods offered for sale under Defendants' Counterfeit Mark.  Any failure, neglect, or default of Defendants in providing goods will reflect adversely on UL.

86.    Upon information and belief, defendants intentionally adopted and use the Counterfeit Mark so as to create consumer confusion and traffic off of UL's reputation and goodwill under the UL Certification Marks and the UL Service Mark.

87.    UL is informed and believes and on that basis alleges that defendants have derived unlawful gains and profits from its infringement of the UL Certification Marks and the UL Service Mark.

88.    The goodwill of UL's business under the UL Service Mark is of great value, and UL will suffer irreparable harm to its trade reputation and goodwill, should defendants' acts of unfair competition and false representation and designations be allowed to continue.

89.    UL has no control over the quality of the goods offered by defendants. Thus, the value of the UL Certification Marks and the UL Service Mark is subject to damage by entities and individuals it cannot control.  Unless enjoined by this Court from so doing, defendants will continue to engage in acts of unfair competition, false representation and designation, to the irreparable damage and injury of UL.

90.    Upon information and belief, from the outset, defendants have engaged in acts of unfair competition, false representation and designation, with knowledge of the

17

COMPLAINT

exclusive rights of UL in and to the UL Certification Marks and the UL Service Mark, and Defendants continue in such acts of unfair competition and intentional false representation and designation, thus entitling UL to an award of its actual damages, disgorgement of Defendants' profits, and attorneys' fees and costs in bringing and maintaining this action, pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

## COUNT FOUR

### (Unfair Competition under California Business and Professions Code §§ 17200 *et seq.*)

91.   UL repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth herein in full.

92.   The above-described conduct of defendants constitutes unlawful and unfair competition in violation of California Business & Professions Code §§ 17200 et seq. (the "UCL"), in that such acts were and are unlawful, unfair, deceptive and/or fraudulent business acts.

93.   Defendants' actions as alleged above violate the "unfair" prong of the UCL, because, on information and belief, (a) the utility of such actions is outweighed by the gravity of harm they cause to UL, (b) such actions are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, (c) such actions constitute incipient violations of state and federal antitrust laws, and/or (d) such actions violate Section 5 of the FTC Act.

94.   Defendants' actions as alleged above violate the "fraudulent" prong of the UCL, because they are likely to mislead and confuse a statistically significant percentage of reasonable consumers.

95.   Defendants' actions as alleged above violate the "unlawful" prong of the UCL because those same actions also constitute violations of the state and federal statutes set forth above.

CHI 69138964v2

96.     As the direct and proximate result of defendants' wrongful conduct, UL has suffered and will continue to suffer actual injury and the loss of money, including irreparable injury to its reputation and goodwill.  Unless enjoined, Defendants' wrongful conduct will continue to cause great, immediate, and irreparable injury to UL.

97.     UL is without an adequate remedy at law.

98.     UL is therefore entitled to injunctive relief, pursuant to California Business and Professions Code § 17203.

**ALLEGATIONS OF DAMAGE COMMON TO ALL CLAIMS FOR RELIEF**

99.     UL repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth herein in full.

100.    UL has suffered, is suffering, and will continue to suffer irreparable harm and damage as a result of defendants' wrongful conduct.  Defendants will, unless restrained and enjoined, continue to act in the unlawful manner complained of herein, all to the irreparable damage of the business and reputation of UL.  UL's remedy at law is not adequate to compensate it for the injuries suffered and threatened.

**PRAYER FOR RELIEF**

WHEREFORE, UL respectfully prays the Court:

A.      Enter a judgment in favor of UL and against defendants, jointly and severally, on all Counts alleged herein.

B.      Designate this action an exceptional case entitling UL to an award of its reasonable attorneys' fees incurred as a result of this action, pursuant to 15 U.S.C. § 1117;

C.      Issue preliminary and permanent injunctive relief against defendants, and each of them, and their respective officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants, enjoining and restraining them from:

    (i)     imitating, copying, or making any other infringing use of the UL Service Mark and the UL Certification Marks by the defendants'

19

CHI 69138964v2

Counterfeit Mark, and any other mark now or hereafter confusingly similar to the UL Service Mark or the UL Certification Mark;

(ii) manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any simulation, reproduction, counterfeit, copy, or colorable imitation of the UL Service Mark, the UL Certification Marks, defendants' Counterfeit Mark, or any mark confusingly similar thereto;

(iii) using any false designation of origin or false description or statement that can or is likely to lead the trade or public or individuals erroneously to believe that any good has been provided, produced, distributed, offered for distribution, circulation, sold, offered for sale, imported, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for UL, when such is not true in fact;

(iv) using the names, logos, or other variations thereof of the UL Service Mark, the UL Certification Marks, or defendants' Counterfeit Mark in any of defendants' trade or corporate names;

(v) engaging in any other activity constituting an infringement of the UL Service Mark, the UL Certification Marks, or of the rights of UL in, or right to use or to exploit the UL Service Marks and the UL Certification Marks; and

(vi) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (v) above;

D.    Order defendants, at their own expense, to recall all products and marketing, promotional, and advertising materials that bear or incorporate defendants' Counterfeit Mark, or any mark confusingly similar to the UL Certification Marks or the UL Service

COMPLAINT

Mark, which have been manufactured, distributed, sold, or shipped by defendants or on their behalf, and to reimburse all customers from which said materials are recalled.

E.      Order defendants to immediately produce and turn over to UL's counsel, all products, labels, signs, prints, packages, molds, plates, dies, wrappers, receptacles, and advertisements in their possession or under its control, bearing the defendants' Counterfeit Mark, and/or any simulation, reproduction, copy, or colorable imitation thereof, and all plates, molds, matrices, and any other means of making the same.

F.      Order expedited discovery to commence immediately.

G.      Order defendants to publish notice to all customers or members of the trade who may have seen or heard of defendants' use of defendants' Counterfeit Mark, which notice shall disclaim any connection with UL and shall advise them of the Court's injunction order and of defendants' discontinuance from all use of defendants' Counterfeit Mark;

H.      Order defendants to pay the costs of corrective advertising;

I.      Order defendants to hold in trust, as constructive trustees for the benefit of UL, its profits obtained from its provision of the defendants' goods offered for sale under defendants' Counterfeit Mark;

J.      Order defendants to provide UL a full and complete accounting of all amounts due and owing to UL as a result of defendants' illegal activities;

K.      Order defendants to pay the general, special, actual, and statutory damages of UL as follows:

    (i)     UL's damages and defendants' profits pursuant to 15 U.S.C. § 1117(a), trebled pursuant to 15 U.S.C. § 1117(b) for defendants' willful violation of the federally registered trademarks of UL; and

    (ii)    If UL so elects, statutory damages of up to $2,000,000 per counterfeit mark, per type of product sold, offered for sale, or distributed, pursuant to 15 U.S.C. § 1117(c);

CHI 69138964v2

L.    Order defendants to pay to UL both the costs of this action and reasonable attorneys' fees incurred by UL in prosecuting this action, pursuant to 15 U.S.C. § 1117(a).

M.    Award UL its prejudgment interest; and

N.    Award such other and further relief as the Court deems just and proper.

DATED:  April 12, 2018               GREENBERG TRAURIG, LLP


By:    /s/ Matthew R. Gershman
       *Attorneys for Plaintiff UL LLC*


## **DEMAND FOR JURY TRIAL**

UL hereby demands a trial by jury of all triable issues raised by this Complaint.

DATED:  April 12, 2018               GREENBERG TRAURIG, LLP


By:    /s/ Matthew R. Gershman
       *Attorneys for Plaintiff UL LLC*

CHI 69138964v2